UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:06cv-151-R

DR. BRUCE TYLER,                                                                PLAINTIFF

v.

UNIVERSITY OF LOUISVILLE, et. al.,
DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' motion to dismiss (Docket #25).

The Plaintiff, Dr. Bruce Tyler, PhD ("Dr. Tyler") has responded (Docket #27) and the

Defendants have replied to his response (Docket #32). This matter is now ripe for adjudication.

For the following reasons, the Defendants' motion to dismiss is **GRANTED in part** and

**DENIED in part**.

## BACKGROUND

Dr. Tyler was hired by the University of Louisville ("University") in 1985, joining its

History Department. In 1991, Dr. Tyler was promoted to an Associate Professor, and in 1992 he

received tenure. Dr. Tyler was the first African-American tenured professor in the History

Department at the University. In the Fall 2004, Dr. Tyler sought a promotion from an Associate

Professor to a Full Professor. After a long process, it was ultimately determined that Dr. Tyler

would not be promoted to a Full Professor. Dr. Tyler contends that the practice of discrimination

at the University, in particular within the History Department, has allowed Caucasian faculty

members to discriminate in their hiring and firing to the exclusion of African-Americans.

In 1992, Dr. Tyler began to engage the history department at the University to address

what he perceived as institutional segregation within the university. His actions included

complaints and criticism of Dr. Thomas Mackey ("Dr. Mackey"), who was Chairman of the History Department at that time.  Dr. Tyler claims that these critiques influenced Dr. Mackey and other members of the History Department to treat him differently when they were considering his proposed promotion from an Associate Professor to a Full Professor.

In June 2003, Dr. Tyler filed a racial discrimination complaint against the University, Dr. Mackey and others within the University with the Equal Employment Opportunity Commission ("EEOC").  Dr. Tyler contends that his filing of the EEOC complaint also contributed to his unfair treatment during the promotion process.

In 2004, Dr. Tyler began the process of applying to become a Full Professor within the History Department.  In February 2004, the Department of History Personnel Committee, which consisted of Co-Defendants: Dr. Tracy K'Meyer ("Dr. K'Meyer"); Dr. Ann Allen ("Dr. Allen"); and Dr. Bruce Adams ("Dr. Adams"), recommended against Dr. Tyler's promotion.  Dr. Tyler responded to their recommendation, objecting to their decision.  Dr. Tyler suggests that the committee reached their initial decision due to a flawed three-year evaluation plan, implemented by the History Department, which rated Dr. Tyler as "not proficient."  Dr. Tyler claims that his "not proficient" rating came in response to his filing the complaint with the EEOC.

Following the recommendation by the History Personnel Committee, the faculty of tenured and tenure-track professors of the History Department voted on the promotion, with the majority not recommending a promotion.  The majority reasoned that Dr. Tyler did not demonstrate "superior" accomplishments as mandated by the "Redbook;" the University's policies and procedural manual, which includes details about the criteria, process and requirements one must meet in order to be promoted to a full professor.  However, Dr. Tyler

contends that four (4) extra-mural scholars described his work as "superior" and recommended the promotion, but that these recommendations were not taken into consideration by the History Department.  Dr. Tyler noted that these extra-mural scholars were selected by Dr. John McLeod ("Dr. McLeod"), Chairman of the History Department, and Co-Defendant Dr. James B. Hudson ("Dean Hudson"), Dean of the School for Arts and Sciences at the University.  After the History Department made its recommendation, Dr. McLeod also recommended against the Plaintiff's promotion.  However, Dr. McLeod issued a seven (7) page report stating that the evaluation used to reach their decision on Dr. Tyler was inaccurate in terms of both "quantity" and "quality."

After Dr. McLeod recommended against the promotion, the Arts and Sciences Personnel Committee met and reviewed Dr. Tyler's application.  In December 2004, they voted unanimously to recommend the promotion.  However, after this committee voted to recommend Dr. Tyler, Dean Hudson recommended against the promotion, reasoning that the Arts and Science Personnel Committee had erroneously concluded that Dr. Tyler's work was "superior." Dr. Tyler asserts that Dean Hudson not only ignored Dr. Tyler's citations and works, as well as the findings by the extra-mural readers, but that he also violated the requirements of the Arts and Sciences Dean's Guidelines by not considering Dr. Tyler's rebuttal when making his decision.

Provost Shirley Willihnganz ("Dr. Willihnganz"), the University Provost, accepted Dean Hudson's recommendation, citing no reasons for her decision.  Dr. Tyler claims that at some point his application for a promotion should have gone to the President of the University, Dr. James Ramsey ("Dr. Ramsey"), in accordance with the Redbook.  However, Dr. Tyler claims that this never happened.

Dr. Tyler alleges that throughout the entire promotion process actions of the History

3

Personnel Committee and others demonstrate that the Defendants held the Plaintiff to a different standard because of his race.  Dr. Tyler claims that: Caucasians got three (3) years credit for published books, while Dr. Tyler received only one (1) year, and that led to him not receiving a "superior" rating; some professors, including Dr. Mackey, had works that were considered "out of bounds," similar to Dr. Tyler, but did not prevent them from receiving a promotion to Full Professor; Caucasian professors received full credit towards a "superior" rating for published translations that were not analytical, while Dr. Tyler did not receive any credit for his pictorial history book that he published; that other professors within the University who only published one (1) book were elevated to full professor status; and Dr. Tyler was denied having a member of the Pan African Studies Department sit on his committee, even though he is cross-listed in that Department, and Dr. Mackey was permitted to have a professor from the Political Science Department, where he is cross-listed, sit on his committee when he was up for promotion to Full Professor.

Dr. Tyler has brought eight (8) counts against the University and the remainder of the Defendants collectively, both individually and in their official capacities.  The counts include: a Title VII Disparate Treatment claim; a Retaliation and Hostile Environment claim; a claim under 42 U.S.C. §1985(3); a claim under 42 U.S.C. §1983, in violation of the due process rights of the Plaintiff under the Fourteenth Amendment; an Equal Protection claim under the Fourteenth Amendment; a claim under the Kentucky Civil Rights Act, asserting three (3) violations of KRS 344; a breach of contract claim against the University under state law; and seeking injunctive relief pursuant to 42 U.S.C. §1983.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

In their motion to dismiss, the Defendants contend that all of the Plaintiff's counts fail as a matter of law. The Court will address each of these arguments individually.

### 1. Claims Against the Defendants in their Official Capacities under 42 U.S.C. §1983 & 42 U.S.C. §1985(3)

The Eleventh Amendment prohibits suits against state governments and their agencies unless Congress has abrogated the sovereign immunity of the state. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). The United States Supreme Court has held that a "suit against a state official in

his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 67 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, a suit against a government agent in their official capacity equates to a suit against the government agency in question.  However, it is well-settled law that "a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 940-41 (6th Cir.1990) (*quoting Quern*, 440 U.S. at 337).  "When suit is brought against a public agency or institution, and/or its officials, 'the application of the Eleventh Amendment turns on whether said agency or institution can be characterized as an arm or alter ego of the state, or whether it should be treated instead as a political subdivision of the state.'" *Hutsell v. Sayre*, 5 F.3d 996, 998-99 (6th Cir. 1993) (*quoting Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir.1984)).  In *Hutsell*, the Sixth Circuit Court of Appeals held that the University of Kentucky is considered "arm of the state under state law and not merely a political subdivision," and therefore, the Eleventh Amendment barred suit against the university and its officials in their official capacity under 42 U.S.C. §1983. *Hutsell*, 5 F.3d at 998-99.  The Eleventh Amendment also precludes actions against state agencies and state employees in their official capacities under 42 U.S.C. §1985(3). *Ferritto v. Ohio Dept. Of Highway Safety*, 928 F.2d 404, *2 (6th Cir. 1991) (*citing Quern*, 440 U.S. at 339-42; *Cowan*, 900 F.2d at 940-41).

In the instant matter, the University of Louisville, similar to the University of Kentucky in *Hutsell*, is an arm of the state under Kentucky law.  The University employees as well as the Board of Trustees, while working in their official capacities, are a part of the state government.

*Will*, 491 U.S. at 67.  Congress has not abrogated state sovereign immunity for monetary claims brought under §1983 and §1985.  However, the §1983 claim against the Defendants for injunctive relief is cognizable, as the United States Supreme Court has held that a state official may be sued in his or her official capacity for injunctive relief. *Will*, 491 U.S. at 71, n.10. Accordingly, the monetary claims under §1983 and §1985 against the individual Defendants in their official capacities, as well as those monetary claims under those statutes against the University itself, are barred by the Eleventh Amendment.  The claim for injunctive relief under §1983 against the Defendants in their official capacity shall go forward at this time.

**2. Claims Against the Individual Defendants in their Individual Capacities under 42 U.S.C. §1983 and 42 U.S.C. §1985(3)**

The individual Defendants assert that they are entitled to qualified immunity from civil damages based on the performance of their duties in their individual capacity, and therefore, the §1983 and §1985(3) claims should fail as a matter of law.  The sequence of analysis to determine whether a state official is entitled to qualified immunity consists of a two-step process that includes: 1) taking into consideration whether a constitutional right has been violated; and 2) if so, determining whether it is a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 703 (1999); *Saucier v. Katz*, 553 U.S. 194, 201 (2001).  In *United States v. Lanier*, the United States Supreme Court held that the existence of a decision within a circuit is not necessary for a court to determine if there is clearly established law, but only that a reasonable person under the circumstances would know that their actions violated another person's constitutional right. *United States v. Lanier*, 520 U.S. 259

7

(1997).  Additionally, the officer must have "fair warning" that their conduct was

unconstitutional. *Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002).  The Court will analyze the

claims under §1983 and §1985 separately.

### *Claim under 42 U.S.C. §1983*

For a plaintiff to assert a claim under §1983, "a plaintiff must allege the deprivation of a

constitutional right caused by a person acting under [the] color of state law." *Bell v. Ohio State*

*University*, 351 F.3d 240, 248 (6th Cir. 2003)(*citing Black v. Barberton Citizens Hosp.*, 134 F.3d

1265, 1267 (6th Cir. 1998)).  In particular, the plaintiff must state a claim that the defendant

violated his/her procedural or substantive due process rights under the Fourteenth Amendment or

an equal protection clause claim under the Fourteenth Amendment. *Bell* at 248-52.  The Court

will analyze each of these potential violations in the context of the instant matter.

### i) Equal Protection Clause Claim

When a §1983 plaintiff states a claim under the equal protection clause, the plaintiff must

prove by "requisite direct, circumstantial, or statistical evidence that he was the target of racial

profiling." *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000).  This burden requires

more than speculation. *Id.* at 790.  In addition, the plaintiff must allege that the state official

intentionally discriminated against a member of a protected class. *LRL Properties v. Portage*

*Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir. 1995) (*citing Henry v. Metropolitan*

*Sewer Dist.*, 922 F.3d 332, 341 (6th Cir. 1990)).

In the instant case, the Plaintiff has alleged that several of the individual Defendants have

discriminated against him on the basis of his race in treating him differently when he applied for

a promotion.  At this stage of the litigation, it would be premature for the Court to dismiss this

claim without giving the Plaintiff an opportunity to conduct discovery to determine whether or not there is "direct, circumstantial, or statistical evidence" of racial profiling by the individual Defendants. *See Saucedo* at 790.  Should evidence arise that the Defendants discriminated against the Plaintiff because of his race, the Court could potentially find that a reasonable person would have known that he/she violated the constitutional rights of the Plaintiff to treat him in that matter.  As such, the Court could potentially determine that individual Defendants are not entitled to qualified immunity.  Accordingly, the Plaintiff's §1983 claim against the Defendants for a violation of the Equal Protection Clause of the Fourteenth Amendment shall go forward at this time.

### ii) Substantive & Procedural Due Process Claims

In order for Dr. Tyler to state a valid §1983 claim for denial of procedural or substantive due process, he would have to demonstrate that his promotion from an Associate to a Full-Time Professor was a property and/or liberty interest recognized by Kentucky state law (procedural due process) or the United States Constitution (substantive due process). *See Bell* at 248-250 (*citing Bd. Of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978); *Atkins v. Parker*, U.S. 115, 129-31(1985)).  "The interests protected by substantive due process are of course much narrower than those protected by procedural due process." *Bell* at 249-250.  The Court will address each of these due process claims individually.

Procedural Due Process

In support of his argument, the Plaintiff refers the Court to the Sixth Circuit Court of Appeals of *Ramsey v. Board of Educ. of Whitley County, Ky.*, where the Court stated that:

> [d]etermining what process is due in a given case requires consideration of a number
> of factors: the nature of the property interest involved (particularly its importance to

9

the individual possessing it); the risk of an erroneous deprivation caused by inadequate procedures designed to safeguard the interest; the value, if any, that additional procedures might provide; and the state's burden in having to provide additional procedures...[w]hen making this determination, the most important consideration to bear in mind is that the fundamental requirement of the Due Process Clause "is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540, (1981).

*Ramsey v. Board of Educ. of Whitley County, Ky.*, 844 F.2d 1268, 1272 (6th Cir. 1988).  In *Ramsey*, though the Court indirectly addressed due process issues related to a teacher's claim that she was deprived of her property interest without due process when the school board reduced her number of sick-leave days, the Court ultimately held that the claim was a common law breach of employment contract, and therefore, was actionable under state law, but not §1983. *Id.* at 1274-75.  Accordingly, for purposes of the due process claim in this case, *Ramsey* does not apply to the instant matter.

The United States Supreme Court has held that "that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.  It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Slinderman*, 408 U.S. 593, 597 (1972).  In *Perry*, the Supreme Court determined that the property interest of a professor at a state-funded junior college who was terminated, though not secured by a contractual tenure provision, was secured by existing rules and understandings that entitled him to a government benefit, which amounted to a property interest for procedural due process purposes. *Perry* at 599-600.  Though the Court did not hold that the plaintiff in *Perry* had a "legitimate claim of entitlement for job tenure," it did hold that the plaintiff had a property interest based on the policies and understandings from the "Faculty

10

Guide," as far as determining his claim to the entitlement. *Id.* at 600.  The Court in *Perry* ultimately determined that procedural due process required that the plaintiff "be given an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution'...such proof would obligate college officials to grant a hearing at his request." *Id.* at 602-3.

In the instant case, in contrast to *Perry*, Dr. Tyler has not been dismissed from his position at the University.  Though the Redbook is analogous to the "Faculty Guide" in *Perry*, the Court recognized that the termination in that matter created the property interest protected under state law. *Id.* at 599-601.  Thus, in determining whether or not Dr. Tyler has a property or liberty interest recognized by state law, the Court must decide whether or not the promotion from Associate to Full-Time Professor qualifies as a protected interest under the procedural due process clause of the Fourteenth Amendment.

The Sixth Circuit Court of Appeals, in *Golden v. Town of Collierville*, held that an applicant for a position does not have a "cognizable property interest" in a promotion as required to establish a procedural due process claim under the Fourteenth Amendment for purposes of §1983. *Golden v. Town of Collierville*, 167 Fed. Appx. 474, 477-478 (6th Cir. 2006).  In reaching this decision, the Court cited the case of *Med Corp., Inc. v. City of Lima*, where the Sixth Circuit Court of Appeals stated "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409-410 (6th Cir.2002) (*quoting  Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  The Court ultimately held that the appellant "'can have no legitimate claim of entitlement to a discretionary

11

decision.'" (*quoting Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir.2000)).  This

holding is consistent with opinions in other circuits that have similarly held that a promotion, in

the context of a state funded college or university, is not a recognized property or liberty interest

for purposes of a procedural due process claim. *See Batra v. Board of Regents of University of*

*Nebraska*, 79 F.3d 717, 720 (8th Cir. 1996) (holding that the University's alleged failure to

follow its own procedural rules and regulations when considering a promotion did not, without

more, give rise to a protected liberty or property interest); *Dube v. State University of New York*,

900 F.2d 587, 599 (2nd Cir. 1990) (holding that a college professor who was entitled only to be

considered for tenure in accordance with established contractual procedures did not have a

protected liberty or property interest in tenure); *Clark v. Whiting*, 607 F.2d 634, 644-45 (4th Cir.

1979).

      In the instant matter, the determination of whether or not to promote Dr. Tyler to a Full

Professor required discretion on the part of the faculty who evaluated his application.  The

University employees who reviewed Dr. Tyler's promotion determined that he was not

"superior" in one of three areas necessary in order to receive the promotion: teaching, research or

service.  In addition, these University employees also concluded that Dr. Tyler was not

"proficient" in all three of the mentioned areas, as required by the Redbook in order to receive a

promotion.  After reaching this determination, the University informed Dr. Tyler of its decision

and the rationale behind it.  Though Dr. Tyler claims that he was treated differently during this

process, the remedy for that claim falls under the area of Equal Protection, and that does not

provide him with a cognizable property or liberty interest for purposes of a procedural due

process claim.  Accordingly, Dr. Tyler's procedural due process claim under §1983 fails as a

matter of law.

Substantive Due Process

As stated *supra*, substantive due process interests are much narrower than procedural due process interests because substantive due process claims involve interests protected by the United States Constitution, while procedural due process rights are created by state law. *See Bell*, 351 F.3d at 248-250.  The Sixth Circuit Court of Appeals, in *Sutton v. Cleveland Bd. of Education*, held that a state employee did not have a property or liberty interest to tenured employment under substantive due process because tenure did not rise to "the level of a 'fundamental interest.'" *Sutton v. Cleveland Bd. of Education*, 958 F.2d 1339, 1350-51 (6th Cir. 1992).  The Court, in *Black v. Columbus Public Schools*, in applying its prior decision in *Sutton*, held that a promotion is not a recognized interest under substantive due process. *Black v. Columbus Public Schools*, 79 Fed. Appx. 735, 738 (6th Cir. 2003).  Here, Dr. Tyler asserts that his substantive due process claim arises from his "protected" interest in receiving a promotion. However, as stated *supra*, the Sixth Circuit and other courts have recognized that such interests are not cognizable substantive due process rights. *See Wu v. Thomas*, 847 F.2d 1480, 1485 (11th Cir. 1988); *Clark v. Whiting*, 607 F.2d 634, 644-45 (4th Cir. 1979).  Accordingly, Dr. Tyler's substantive due process claim under §1983 fails as a matter of law.

### Claim under 42 U.S.C. §1985(3)

Dr. Tyler claims that he was deprived of equal protection of the law because the individual Defendants conspired against him.  To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any

13

person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (*quoting United Bhd. of C & J v. Scott*, 463 U.S. 825, 828-29 (1983)).  These alleged acts that may have deprived the Plaintiff of equal protection must result from a class-based animus directed by the Defendants against the Plaintiff. *Vakilian* at 518-19.

In the instant matter, Dr. Tyler has alleged that several of the independent Defendants, including Dr. Mackey and the three (3) members of the History Personnel Committee, conspired against him.  Further, the Plaintiff claims that their purpose in doing so was based on his race, and that their decision in recommending to deny his promotion resulted in his not becoming a Full Professor within the History Department.  As such, Dr. Tyler has stated a sufficient claim to meet the pleading requirements of FRCP 8.

The Defendants assert that this claim should fail as a matter of law because no constitutional violation occurred, and therefore, the individual Defendants are entitled to qualified immunity.  However, similar to the reasoning applied by the Court to the equal protection claim under §1983, at this stage of the litigation, it would be premature for the Court to dismiss this claim without giving the Plaintiff an opportunity to conduct discovery to determine whether or not there is "direct, circumstantial, or statistical evidence" of racial animus by the individual Defendants. *See Saucedo* at 790.  Should evidence arise that the Defendants conspired to discriminate against the Plaintiff because of his race, the Court could potentially find that a reasonable person would have known that it violated the constitutional rights of the

14

Plaintiff to treat him in that matter.  As such, the Court could potentially determine that individual Defendants are not entitled to qualified immunity.  Accordingly, the Plaintiff's §1985(3) claim against the Defendants for a violation of the Equal Protection Clause of the Fourteenth Amendment shall go forward at this time.

### 3. State Law Claims against the Defendants in their Official Capacities

Dr. Tyler has also asserted claims against the Defendants in their official capacities for violations of the Kentucky Civil Rights Act, KRS Chapter 344.  The Defendants contend that no individual liability exists for the individual Defendants under KRS Chapter 344.  The Court agrees with this determination, as the Sixth Circuit Court of Appeals, in *Wathen v. General Electric Co.*, held "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII. Because KRS Chapter 344 mirrors Title VII, we find our holding equally applicable to KRS Chapter 344." *Wathen v. General Electric Co.*, 115 F.3d 400, 404-405 (6th Cir. 1997).  As such, the Court holds that the only valid claim against any of the Defendants under KRS Chapter 344 would be against the University of Louisville, and the claims against the individual Defendants under KRS Chapter 344, in both their official and individual capacities, fail as a matter of law.  In addition, the Court notes that the analysis for the asserted state law claims is the same as the analysis used in examining claims under Title VII of the Civil Rights Act of 1964 because KRS Chapter 344 mirrors the federal law. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000).  As such, the following determinations shall apply to both sets of claims under state and federal law.  Dr. Tyler alleges three (3) claims against the University under KRS Chapter 344, which includes claims for

15

discrimination, retaliation and the condoning and/or creation of a raced based hostile work environment.  The Court will address each of these claims separately.

### *Discrimination under KRS §344.040(1)*

The Kentucky Civil Rights Act ("KCRA"), KRS §344.040(1), modeled after its counterpart federal statute - the 1964 Civil Rights Act, Title VII, 42 U.S.C. §2000(e) - states in pertinent part:

> [i]t is an unlawful practice for an employer: (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's *race*, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking (emphasis added).

It is recognized that in race discrimination cases, when there is no direct evidence of discrimination, as is the case in the instant matter, courts follow the burden shifting analysis standard applied by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *See Pierce v. Commonwealth*, 40 F.3d 796, 801 (6th Cir. 1994). Under the *McDonnell Douglas* standard, the Plaintiff must first establish a *prima facie* case of discrimination by showing: 1) that he/she belongs to the statutory protected class, which in this case is a racial minority, at the time of the alleged discrimination; 2) he/she performed his/her job satisfactorily; 3) he/she was subject to an adverse employment decision and 4) the adverse decision resulted in a person not in the protected class receiving favor over the person in the protected class. *McDonnell Douglas* at 802-805; *see also Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. App. 1984); *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997); *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  If the plaintiff

16

can meet this initial hurdle, the burden then shifts to the employer who must then state with clarity their legitimate reason for the adverse decision. *Harker*, 679 S.W.2d at 230.  If the employer offers a legitimate reason, then the burden shifts back to the plaintiff who must then show that he/she is the victim of intentional discrimination and the employer's reasons were pretextual. *Id*. at 230; *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 700-701 (Ky. App. 1991).

To meet this final burden the plaintiff must offer direct or circumstantial evidence that rebuts the reasoning offered by the employer. *Handley*, 827 S.W.2d at 700-701; *Kentucky Department of Corrections v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) (*citing Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1973); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083-84 (6th Cir. 1994).  Direct evidence consists of evidence, "which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *McCullough*, 123 S.W.2d at 135.  Circumstantial evidence is "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Id.*  Although the burden of proof may be on the plaintiff to meet this final standard, in a civil rights case the Plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his[/her] rejection were in fact a coverup for a...discriminatory decision." *McDonnell Douglas* at 805.  "To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate

17

discharge.'" *Manzer*, 29 F.3d at 1084 (*quoting McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993)).

In the instant matter, Dr. Tyler appears to have sufficiently alleged a claim under KRS §344.040(1) as he is a member of a protected class; he received an adverse employment decision; he claims that he was qualified for the position in question, and offers evidence as to that fact; and he claims that Caucasian faculty members were treated more favorably than he was during their promotion process. The University argues that Dr. Tyler cannot establish a *prima facie* case in this matter because he cannot demonstrate that he was otherwise qualified for the position of Full Professor within the History Department. However, the process in which Dr. Tyler was analyzed by the History Personnel Committee and other faculty members, as dictated by the Redbook and its interpretation by certain faculty members, appears inconsistent based on the complaint by the Plaintiff and the motions submitted by the Defendants. The inconsistency in determining what credit Dr. Tyler received for his work product is supported by the statement of Dr. McLeod, which noted that the History Personnel Committee erroneously reached some of their conclusions as to the "quality" and the "quantity" of Dr. Tyler's work.

Based on the alleged discrepancies regarding the evaluation process, the Court does not believe that Dr. Tyler's discrimination claim fails as a matter of law at this juncture of the litigation. Accordingly, his state law claim against the University for discrimination under KRS 344.040(1) shall go forward at this time.

### *Retaliation under KRS §344.280(1)*

To establish a *prima facie* case for retaliation, a party must demonstrate: (1) he/she engaged in a protected activity; (2) his/her engagement in that protected activity was known to

his employer; (3) his/her employer, thereafter, took an adverse employment action against him; and (4) that a causal link exists between his engagement in the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790, 801-803 (Ky. 2004); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (applying the same standard under Title VII).  "Although no one factor is dispositive in establishing a causal connection, evidence...that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen*, 229 F.3d at 563. "'Previous cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months.'" *See DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (*quoting Parnell v. West*, 1997 WL 271751, at *3 (6th Cir. May 21, 1997)).  The causal link can be proven through two ways, either: "(1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation." *Nguyen* at 566.

The Defendants assert that Dr. Tyler's complaint cannot establish a *prima facie* for retaliation because of the time difference of the EEOC claim made in June 2003 to the recommendations made against the promotion in February 2004 through the beginning of 2005. The Defendants cite *Nguyen* in support of their argument, noting that the Sixth Circuit Court of Appeals, in affirming the decision of the lower court to deny the claim of retaliation, emphasized that proximity must be considered "along with other evidence of retaliatory conduct." *Nguyen* at 566.   The Court in *Nguyen* went on to hold that "temporal proximity in the absence of other evidence of causation is not sufficient to raise an inference of a causal link." *Id.* at 566-67.

In the instant matter, at this juncture, the Court cannot properly determine whether or not

Dr. Tyler has failed to meet his burden in establishing a *prima facie* case of retaliation.  On its face, the complaint appears to satisfy three (3) out of the four (4) elements necessary to sustain a *prima facie* case of retaliation, including: that Dr. Tyler engaged in a protected activity; the University knew that he was engaged in such a protected activity; and that he suffered an adverse action at the hands of his employer, the University.  Dr. Tyler must satisfy the fourth and final element of his retaliation claim by demonstrating a causal connection between the EEOC complaint and the decision by the University either through direct evidence or knowledge that coincides with close proximity. *See Nguyen* at 566.  At this point in the litigation, Dr. Tyler does not need to proffer this evidence.  He has sufficiently alleged in his complaint that his EEOC complaint influenced the decision of the History Personnel Committee and Dr. Mackey to recommend against his promotion.  Accordingly, Dr. Tyler's state law claim against the University for retaliation under KRS 344.280(1) shall go forward at this time.

### *Hostile Work Environment under KRS §344.040*

In order to establish a racially hostile work environment claim under KRS Chapter 344, a plaintiff must show that "the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim subjectively regarded it as abusive." *Smith*, 220 F.3d at 760 (*citing Jackson v. Quanex Corp.*, 191 F.3d 647, 658-59 (6th Cir.1999)); *see also Burnett v. Tyco Corp.*, 203 F.3d 980, 982-83 (6th Cir.2000)).  "Racial animus cannot be inferred from a handful of discriminatory comments by low-level employees." *Smith* at 760.  The hostile environment must be "commonplace, ongoing, or continuing and therefore not pervasive discriminatory conduct." *Id.* (*citing Burnett*, 203 F.3d at 984-85).

20

In the instant matter, at this time, it appears problematic that the Plaintiff may prevail on this claim. Nonetheless, a valid claim has been asserted, and discovery may provide additional facts to support the claim. The Court cannot conclude at this time that the claim should be dismissed, however, a summary judgment may be appropriate at the close of the evidence as to this claim. Accordingly, the Plaintiff's hostile work environment claim shall go forward at this time.

### 4. Breach of Contract Claim

The Defendants contend that Dr. Tyler's breach of contract claim cannot go forward in this Court because KRS 45A.245(1) requires that this claim be filed in the Franklin Circuit Court. KRS 45A.245(1) states:

> (1) Any person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract, including but not limited to actions either for breach of contracts or for enforcement of contracts or for both. Any such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury. All defenses in law or equity, except the defense of governmental immunity, shall be preserved to the Commonwealth.

In *Haeberle v. University of Louisville*, the Court ordered that the Plaintiff submit his breach of contract claim in Franklin Circuit Court as mandated by KRS 45A.245(1), even though the Plaintiff also brought federal law claims that the Court addressed. *Haeberle v. University of Louisville*, 2004 WL 595257, *1-*2 (Ky. Ct. App. 2004); *Haeberle v. University of Louisville*, 2002 WL 768316 (W.D.Ky. 2002).

Here, the Court has already determined *supra* that the University is a branch of the Commonwealth of Kentucky for purposes of this litigation. KRS 45A.245(1) constitutes a

21

waiver of sovereign immunity that permits suits against the Commonwealth of Kentucky. *Com. v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002).  However, though plaintiffs may bring suit against the Commonwealth for written breach of contract claims, plaintiffs must abide by the process approved by the Commonwealth in order to bring the claim. *Id.*  Accordingly, the breach of contract against the University must be brought by the Plaintiff in Franklin Circuit Court.

### 5. Injunctive Relief

In Count VIII of his complaint, Dr. Tyler seeks injunctive relief pursuant to 42 U.S.C. §1983, asking this Court to find that the Redbook constitutes a contract between the University and Dr. Tyler, and enjoining the Defendants from taking any disciplinary action against the Plaintiff until he has been given a "fair" evaluation to become a Full Professor.  In determining whether to issue a preliminary injunction, the Court must consider: "(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 347-48 (6th Cir. 1998).  "'The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" *Id.* at 348 (*citing Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir.1978)).  Rule 52 requires a district court to make specific findings concerning each of these four factors, unless fewer are dispositive of the issue. *United States v. School District of Ferndale*, 577 F.2d 1339, 1352 (6th Cir.1978).  Courts must balance these

22

factors with other traditional "equity" factors. *Weaver v. University of Cincinnati*, 942 F.2d 1039, 1045 (6th Cir. 1991).

At this juncture, the Court cannot determine whether the Plaintiff is entitled to injunctive relief, as the Court cannot state with certainty, one way or the other, whether the Plaintiff has a strong likelihood to succeed on the merits or whether the Plaintiff will suffer an irreparable injury.  In addition, the Plaintiff has not filed a motion under Rule 52 seeking injunctive relief in this matter.  Accordingly, the Court cannot render a decision on Count VIII of the Plaintiff's complaint at this time.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.  Claims against the Defendants for monetary damages in their official capacities under 42 U.S.C. §1983 and §1985(3) fail as a matter of law; however, the claims against the Defendants for injunctive relief in their official capacities under  42 U.S.C. §1983 shall go forward at this time.  The claims against the Defendants in their individual capacities under 42 U.S.C. §1983 and §1985(3) shall go forward at this time.  The state law claims against the individual Defendants in both their official and individual capacities fail as a matter of law; however, the state law claims against the University of Louisville for discrimination, retaliation and condoning and/or creating a racially hostile work environment under KRS Chapter 344 shall go forward at this time.  The breach of contract claim filed by the Plaintiff against the University of Louisville cannot go forward, as it must be filed in Franklin Circuit Court.  Lastly, the Plaintiff's request for injunctive relief cannot be determined at this time.

An appropriate order shall issue.

23

24